UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| BRAINWARE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:11cv755-REP |
| | ) |
| SCAN-OPTICS, LTD. | ) |
| and | ) |
| SCAN-OPTICS, LLC, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
SCAN-OPTICS, LLC'S MOTION FOR A LIMITED STAY OF DISCOVERY**

COMES NOW Plaintiff, Brainware, Inc. ("Brainware"), by counsel, and files this Brief in Opposition to Defendant Scan-Optics, LLC's ("Scan-Optics USA's") Motion for a Limited Stay of Discovery ("Motion") and its Memorandum of Law in Support of the Motion, (ECF 36), ("Defendant's Memorandum" or "Def. Mem."):

**Preliminary Statement**

Claiming that its Motion to Dismiss is "highly meritorious" and that Brainware has "inappropriately" taken action to "ensnare Scan-Optics USA into this lawsuit," (Def. Mem. at 4), Scan-Optics USA moves the court to indefinitely delay the discovery process as to it. In so moving, Scan-Optics USA ignores the Court's verbal instruction during the pretrial conference that Brainware should commence discovering information from Scan-Optics USA without delay.[1] Scan-Optics USA also ignores the Court's February 16, 2012 order, (ECF 21), which

---

[1] Although no representative of Scan-Optics USA attended the pretrial conference, the lawyers who represent Scan-Optics, Ltd. were there. The Court instructed them to immediately call Scan-Optics USA to notify the company to "get on its high horse." Brainware has no reason to believe that the lawyers for the subsidiary did not do as they were instructed.

"ORDERED that the plaintiff shall be authorized immediately to file and serve written discovery upon the newly added defendant." Id.

Scan-Optics USA's accusation that Brainware has "ensnared" it in this case is quite remarkable. Scan-Optics fails to acknowledge that Scan-Optics USA ensnared itself into this dispute nearly one year ago. Scan-Optics USA instructed Scan-Optics, Ltd. ("Scan-Optics UK") and Brainware that authority over the dispute resided with Scan-Optics USA, not Scan-Optics UK. Accordingly, as it was instructed to do, Brainware dealt exclusively with Scan-Optics USA concerning the debt. Scan-Optics USA's CEO and Executive Vice President traveled to Virginia to meet with Brainware concerning the debt. No one from Scan-Optics UK attended these meetings. Scan-Optics USA, and Scan-Optics USA alone, negotiated a resolution of the debt with Brainware in Virginia. Then, Scan-Optics USA contacted Brainware and said that it was not going to resolve the debt because its parent company said it could not do so.

These are not the actions of a company that has no involvement or obligation with respect to a legal claim for money. Companies do not go around volunteering to assume authority over the debts of other companies, as Scan-Optics USA did here. It should be obvious that Scan-Optics USA is the one that "ensnared" itself in this dispute, not Brainware, and that discovery into the relationship between Scan-Optics USA and Scan-Optics UK is entirely appropriate.

**Argument**

**I.    The Motion to Dismiss provides no basis for delaying discovery from Scan-Optics USA in this case.**

The key ingredient in Scan-Optics USA's Motion is its claim that the Motion to Dismiss is "highly meritorious." Brainware filed a Brief in Opposition to the Motion to Dismiss, (ECF 37), in which Brainware established that Scan-Optics USA's Motion should be denied.

The man who submitted an affidavit in support of the Motion to Dismiss, CEO Rice, failed to mention in his affidavit: (1) that, prior to Brainware filing suit, Scan-Optics USA injected itself into the discussions with Brainware to the exclusion of Scan-Optics UK, who it represented as neither having the authority nor the ability to resolve the debt, (2) that he personally visited Brainware's corporate headquarters in Virginia to transact business with Brainware concerning the specific debt at issue in this lawsuit, (3) that Scan-Optics USA and Brainware entered into a separate Consulting Agreement, which involved numerous other contacts with Virginia by Scan-Optics USA and (4) that Scan-Optics USA claims that this Court does not have jurisdiction over the company even though Scan-Optics USA selected this Court as the forum for a lawsuit it filed as the plaintiff several years ago. Scan-Optics USA also failed to account in its Motion for the unambiguous forum selection clause in the parties' Agreement, which designates Virginia as having jurisdiction over the parties.

On the alter-ego claim, Scan-Optics USA continues to insist that Brainware has insufficiently alleged the necessary "elements" of an alter-ego claim under Virginia law. In so insisting, Scan-Optics USA ignores that English law, not Virginia law, defines the criteria for piercing the corporate veil in this case.[2] Scan-Optics USA then forgets that, under English law, no clear list of "elements" or "principles" exists. See Adams v. Cape Indus. Plc, [1990] 1 Ch. 433 (C.A.) at 543 ("from the authorities cited to us we are left with rather sparse guidance as to the principles which should guide the court in determining [whether to lift the corporate veil.]…We will not attempt a comprehensive definition of those principles"); Gabriel Capital, L.P. v. NatWest Fin., Inc., 122 F.Supp.2d 407, 433 n.13 (S.D.N.Y. 2000) ("Unlike American

---

[2] See Morrow v. Vaughan-Bassett Furniture Co., Inc., 173 Va. 417, 422, 4 S.E.2d 399, 401 (1939) (the law of incorporation determines whether a stockholder is liable for the debt of the corporation).

law, English case law does not provide an enumerated set of factors that a court can evaluate in deciding whether to lift the corporate veil.").

Scan-Optics USA also ignores the suggestions in English and Virginia law that alter-ego claims are highly dependent upon the unique facts of each case and that a trial is typically necessary to investigate and resolve such claims. Adams at 536 ("the court is entitled, indeed bound, to investigate the relationship between the parent and the subsidiary"); O'Hazza v. Executive Credit Corp., 246 Va. 111, 115, 431 S.E.2d 318, 321 (1993) ("Each case is *sui generis* and requires examination of the particular factual circumstances surrounding the corporation and the acts in question. Determination of these facts is within the province of the trial court…"); Millisor v. Anchor Point Ventures, L.L.C., 77 Va. Cir. 246, 253-54 (City of Hopewell Nov. 7, 2008) ("the demurrer [motion to dismiss] stage is too early to evaluate a claim grounded in part on a theory of piercing the corporate veil").

For these and other reasons explained in Brainware's Brief in Opposition to the Motion to Dismiss, Scan-Optics USA's Motion to Dismiss provides no basis for delaying discovery. This is particularly the case in light of the Court's February 16, 2012 Order, (ECF 21), which clearly expresses the Court's desire that discovery continue without delay with respect to Scan-Optics USA.

**II.   A stay in discovery against Scan-Optics USA will impede the orderly preparation of this case for trial and will impede Brainware's pursuit of its claims against Scan-Optics UK.**

A trial date is set for September 17, 2012. A settlement conference is scheduled for April 26, 2012. Part of the reason for the delay in conducting the settlement conference until April was the need to conduct written discovery from the parties, including Scan-Optics USA, and the need to give the new Defendant, Scan-Optics USA, time to participate in that process.

Staying discovery against Scan-Optics USA will not assist in the resolution of this case at the settlement conference, and it will most certainly not assist the parties in preparing for a trial that is less than six months away. On the contrary, delaying discovery against Scan-Optics USA will only hinder settlement and trial preparation. The parties need to conduct depositions, for example. Before conducting depositions, the parties need to engage in written discovery. Next, a deadline for summary judgment motions arrives. All of these steps in the litigation process are impeded if the first step, written discovery, is stayed.

III. **Scan-Optics USA's obligation to produce information under the Federal Rules is not dependent upon its status as a party to this litigation.**

Scan-Optics USA operates under the mistaken impression that it will not be subject to discovery if it is dismissed as a defendant. However, even if Scan-Optics USA is not joined as a defendant, it will be required to answer discovery. Whether Scan-Optics USA likes it or not, the company injected itself into the dispute and became the party with whom Brainware dealt. It engaged in numerous oral and written communications with Scan-Optics UK, Brainware, and Patriach Partners concerning the facts of this case. All of those communications are legitimate and fair areas for discovery, irrespective of Scan-Optics USA's status as a defendant in this litigation. Scan-Optics USA would at a minimum be required to produce discovery and deposition testimony pursuant to subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure. The response times for production under such Rule 45 subpoenas would be shorter than response times provided under Rules 33 and 34.

IV. **The discovery sought is not unduly burdensome or onerous.**

Scan-Optics USA complains about the breadth and number of discovery requests. The discovery served by Brainware makes inquiry into the classic areas of inquiry for an alter-ego liability claim. Indeed, the discovery is aimed at the factual contentions that Scan-Optics USA

5

inserted into CEO Rice's affidavit. Rice states in his affidavit that the business lines of the companies are separate, that each company manages its own day-to-day affairs, that each company has its own bank accounts, that each company maintains its own books and records and that each company generates enough cash to sustain its own operations. (See ECF 27, Mem. in Supp. of Motion to Dismiss at Ex. A, ¶¶ 4-8.)

While making such assertions in CEO Rice's affidavit, Scan-Optics USA turns right around and complains in its Memorandum of Law that Brainware seeks discovery of its financial statements, finances, communications with Scan-Optics UK over personnel decisions, and communications with Scan-Optics UK concerning Brainware, and that it is too "burdensome" for Scan-Optics USA to be expected to answer questions on those subjects. (Mem. in Supp. at 4-5.) Scan-Optics USA cannot have it both ways. It cannot rely upon sweeping assertions concerning its relationship with Scan-Optics UK, such as those made in Rice's affidavit about the finances of each company, and then maintain that answering discovery aimed at those allegations is too "onerous" and "burdensome."

The claim of burden is overblown when one considers the privilege log produced by Scan-Optics USA on March 26, 2012. It is attached hereto as Exhibit A. In its privilege log, Scan-Optics USA reveals that it has already identified, gathered, and studied significant amounts of information responsive to Brainware's discovery requests. The vast majority of these documents are communications between Scan-Optics UK and Scan-Optics USA (including attorneys for Scan-Optics UK and personnel employed by Scan-Optics USA) concerning the debt owed to Brainware under the Agreement. The following are two examples:

| | | | | | | |
|---|---|---|---|---|---|---|
| 8/25/2011 | Email | Richard Lieberfarb | Daniel Fitch; Skip Roberts | | AC/AWP | Requesting legal advice regarding potential Brainware litigation |
| 8/25/2011 | Email | Richard Lieberfarb | Daniel Fitch; Skip Roberts; Carolyn Schiff; Peter Moralee; Tom Rice | | AC/AWP | Requesting legal advice regarding potential Brainware litigation |

  Richard Lieberfarb is the former CEO and then became its Executive Vice President. On August 25, 2011, he had two communications with Mr. Fitch, counsel of record for Scan-Optics UK in this lawsuit. As the Court will recall, at the February 15, 2012 pretrial conference, counsel for Scan-Optics UK indicated they did not represent Scan-Optics USA and disclaimed being in contact with Scan-Optics USA concerning the lawsuit. This led the Court to instruct counsel for Scan-Optics UK to immediately advise his client to contact Scan-Optics USA to make it aware of the suit, to tell it to hire counsel, and to "get on their high horse" in the case. Scan-Optics USA, however, has now classified communications with counsel for Scan-Optics UK that occurred six months before the pretrial conference in August 2011 as being protected from disclosure by the attorney-client privilege and work product protection, and the entries on the privilege log indicate that those communications involved "[r]equesting legal advice regarding potential Brainware litigation."

  Additional communications sought to be withheld from production include discussions among Scan-Optics UK personnel (Pete Moralee), Scan-Optics USA personnel (Richard Lieberfarb and Tom Rice, current CEO), and attorneys for Scan-Optics UK (Mr. Fitch). The following are several examples:

7

| | | | | | | |
|---|---|---|---|---|---|---|
| 9/12/2011 | Email Attachment | Peter Moralee | Richard Lieberfarb | | AC/AWP | Information provided at request of counsel in connection with provision of legal advice regarding potential Brainware litigation. |
| 10/12/2011 | Email | Keith O'Leary | Richard Lieberfarb; Tom Rice | Daniel Fitch; Peter Moralee | AC/AWP | Request for information in connection with a request for legal advice regarding potential Brainware litigation. |
| 10/12/2011 | Email | Richard Lieberfarb | Keith O'Leary; Tom Rice | Daniel Fitch; Peter Moralee | AC/AWP | Provision of information in connection with request for legal advice regarding potential Brainware litigation. |
| 10/12/2011 | Email | Peter Moralee | Richard Lieberfarb | Daniel Fitch; Keith O'Leary; Tom Rice | AC/AWP | Provision of information in connection with request for legal advice regarding potential Brainware litigation. |
| 10/12/2011 | Email | Richard Lieberfarb | Keith O'Leary; Tom Rice | Daniel Fitch; Peter Moralee | AC/AWP | Provision of information in connection with request for legal advice regarding potential Brainware litigation. |
| 10/12/2011 | Email | Richard Lieberfarb | Keith O'Leary | Daniel Fitch; Peter Moralee; Tom Rice | AC/AWP | Provision of information in connection with request for legal advice regarding potential Brainware litigation. |

Scan-Optics USA claims all of these communications are privileged or protected. These are some of the same categories of documents for which Scan-Optics USA raises a "too burdensome" objection.

**V.     Scan-Optics UK's discovery responses are deficient and, in any event, do not excuse Scan-Optics USA from participating in discovery under the Federal Rules.**

Finally, Scan-Optics USA claims that Scan-Optics UK has already produced "over 500" emails in discovery and that Brainware can "fully occupy itself by reviewing those documents, taking depositions," and "otherwise pursuing the merits of its claims" against Scan-Optics UK. (Mem. in Supp. at 5-6.)[3]   This argument is circular, however, because Scan-Optics UK objected to producing, and withheld from production, documents that relate to its financial condition or ability to satisfy a judgment. For example, Brainware's document requests Nos. 10, 11, 75 - 78 seek, respectively:

---

[3]   Scan-Optics USA does not mention that Brainware has produced far more information to Scan-Optics UK. Brainware produced 18,217 pages of documents to Scan-Optics UK.

8

>    10.   All Documents relating to the ability of Scan-Optics [UK] to perform its obligations under the Agreement, including its ability to make payments to Brainware due under the Agreement.
>
>    11.   All Documents that relate to Scan-Optics' [UK} knowledge prior to the negotiation and execution of the Agreement of its abilities to perform its obligations under the Agreement, including operational and financial abilities.
>
>    75.   All Documents that relate to Scan-Optics' [UK] audited and unaudited financial statements, on a quarterly and annual basis, since 2008, including income statements, balance sheets, and statements of cash flows.
>
>    76.   All Documents that relate to Scan-Optics' [UK] off-balance sheet liabilities.
>
>    77.   All Documents that relate to assets and liabilities identified in the Scan-Optics [UK] balance sheets since 2008, including all supporting schedules (e.g., accounts payables aging, accounts receivables aging).
>
>    78.   All bank account statements for Scan-Optics [UK] since 2008, including all Documents relating to such statements.

Scan-Optics UK objected to each of these request, stating:

>    Objection. This request seeks information outside the scope of permissible discovery, set forth in Federal Rule of Civil Procedure 26, which information is neither relevant to the claims and defenses of this action, nor reasonably calculated to lead to the discovery of admissible evidence. This request constitutes an improper request for information concerning Scan-Optics financial position and ability to satisfy a judgment. Additionally, this request seeks highly confidential proprietary information.

Scan-Optics UK also objected to producing and withheld from production documents that relate to any interaction between Scan-Optics UK and Scan-Optics USA. For example, Brainware's document requests Nos. 79 – 82 sought:

>    79.   All Documents that relate to any payment made by Scan-Optics, LLC [USA] for or on behalf of Scan-Optics [UK].
>
>    80.   All Documents that relate to any payment made by Scan-Optics [UK] for or on behalf of Scan-Optics, LLC [USA].
>
>    81.   All Documents that relate to any cash transferred between Scan-Optics [UK] and Scan-Optics, LLC [USA] for any reason.

9

>       82.     All Documents that relate to any cash transferred between Scan-Optics [UK] and Patriarch for any reason.

Scan-Optics UK objected by stating:

> Objection: This request seeks information outside the scope of permissible discovery, set forth in Federal Rule of Civil Procedure 26, which information is neither relevant to the claims and defenses of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Scan-Optics, LLC is a separate legal entity which is not a party to this lawsuit, nor is it a party to the Agreement alleged by Brainware. Moreover piercing Scan-Optics' corporate veil has not been put at issue in this action. In addition, this request is asserted for an improper purpose to intimidate and harass Scan-Optics. This request constitutes an improper request for information concerning Scan-Optics' financial position and ability to satisfy a judgment. Additionally, this request seeks highly confidential proprietary information. Further, this request has no temporal limitation and is therefore facially over broad.

Scan-Optics USA's claim that Brainware already has the discovery it needs from Scan-Optics UK is therefore without merit.[4]

Scan-Optics USA also fails to appreciate or acknowledge that discovery from Scan-Optics USA is necessary for pursuing claims against Scan-Optics UK. Again, Scan-Optics USA operates under the false impression that its obligation to participate in discovery is dependent upon its role as a defendant in this case. The Federal Rules of Civil Procedure allow discovery by deposition and subpoena against non-parties, and Brainware fully intends to obtain discovery of information held by Scan-Optics USA pertaining to this action irrespective of Scan-Optics USA's status as a defendant. At this point in time, Scan-Optics USA is a defendant and is subject to interrogatories and requests for production of documents under Rules 33 and 34. It should answer that discovery, especially in light of the Court's February 16, 2012 Order, (ECF 21).

---

[4] Scan-Optics UK's production is woefully lacking in other ways as well. Brainware is in the process of outlining these deficiencies in a letter to Scan-Optics UK and will try to resolve the issues amicably in an attempt to avoid burdening the Court with a motion to compel.

**Conclusion**

For the reasons stated herein, Scan-Optics USA's Motion for a Limited Stay of Discovery should be denied. The Motion is a misguided attempt to delay discovery in a case that needs to be developed to meet the September 17, 2012 trial date and the pretrial deadlines in the Court's scheduling order. The Motion to Dismiss filed by Scan-Optics USA is not "highly meritorious" but, rather, based upon incorrect and incomplete factual representations from its CEO in an affidavit. Moreover, and irrespective of Scan-Optics USA's status as a defendant in this case, Scan-Optics USA is and will be subject to discovery under the Federal Rules. Finally, the Court has instructed Brainware to immediately commence discovery from Scan-Optics USA and has entered an order specifically authorizing that. Under these circumstances, the request to delay discovery indefinitely against Scan-Optics USA is without merit, and should be denied.

Respectfully submitted,

BRAINWARE, INC.


By: *Kevin W. Mottley*
Kevin W. Mottley
The Mottley Law Firm
*Counsel for Plaintiff Brainware, Inc.*
1700 Bayberry Court, Suite 203
Richmond, Virginia 23226
Ph: 804-930-1022
Fax: 804-767-2592
Email: *kevinmottley@mottleylawfirm.com*

Of Counsel:

James Zubok
President, Brainware, Inc.
20110 Ashbrook Place, Suite 150
Ashburn, VA 20147
Ph: 703-948-5890
Fax: 703-948-5891

## **CERTIFICATE OF SERVICE**

I certify that, on March 28, 2012, I caused the foregoing document to be served by email upon the following counsel of record for Defendant in this matter using the Court's ECF system, which caused the document to be so served:

>Charles Michael, Esq.
>Brune & Richard LLP
>One Battery Park Plaza
>New York, New York 10004
>*cmichael@bruneandrichard.com*
>
>Daniel L. Fitch, Esq.
>Wharton, Aldhizer & Weaver PLC
>100 South Mason Street
>Harrisonburg, Virginia 22801
>*dfitch@wawlaw.com*
>
>Robert R. Musick, Esq.
>ThompsonMcMullan, P.C.
>100 Shockoe Slip
>Third Floor
>Richmond, VA 23219
>*bmusick@t-mlaw.com*

>             *Kevin W. Mottley*         
>Kevin W. Mottley (VSB No. 40179)
>*Counsel for Plaintiff Brainware, Inc.*
>The Mottley Law Firm PLC
>1700 Bayberry Court, Suite 203
>Richmond, Virginia 23226
>Ph:804-930-1022
>Fax:804-767-2592
>Email: *kevinmottley@mottleylawfirm.com*