

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRAINWARE, INC.,

    Plaintiff,

v.                            Civil Action No. 3:11cv755

SCAN-OPTICS, LTD., *et al.*,

    Defendants.


## MEMORANDUM OPINION

This matter is before the Court on Brainware, Inc.'s ("Brainware") oral motion to compel the production of a number of documents that Scan-Optics, Ltd. and Scan-Optics, LLC have identified as privileged. The issues have been briefed, and the documents were reviewed *in camera*. For the reasons below, Brainware's request for documents (Docket No. 64) will be granted, and the claims of privilege will be overruled.


## PROCEDURAL BACKGROUND

At the May 17, 2012 conference call, Brainware brought the dispute between the parties regarding privileged documents to the Court's attention. Brainware explained that there were a number of documents the privileged-status of which was contested. The Court ordered that Brainware consult with the

defendants and attempt to resolve the dispute, and, in the event that the parties were unable to resolve the dispute, both defendants were to file a brief explaining their position with respect to each requested privileged document. The defendants were ordered to each submit a binder containing the disputed documents to the Court. May 18, 2012 Order (Docket No. 48).

After that Order was issued, the parties met in an attempt to resolve the dispute. As a result of their discussions, Scan-Optics, LLC and Scan-Optics, Ltd. produced a number of the requested documents. However, the parties were unable to agree on the appropriate status of some 100 documents, and consequently, the defendants each filed a response brief and submitted a copy of the privileged documents to the Court. Thereafter, Brainware filed a response to the defendants' briefs, and the defendants timely filed their replies.

## LEGAL STANDARD

The purpose of the attorney-client privilege is to "promote broader public interests in the observance of law and administration of justice . . . [t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn v. United States, 449 U.S. 383, 389 (1981). Thus, the application of the privilege laws serves

2

an important purpose in our legal system, but that application can also "remove otherwise pertinent information from the fact finder, thereby impeding the full and free discovery of the truth." Rambus, Inc. v. Infineon Techs. AG, 220 F.R.D. 264, 271 (E.D. Va. 2004). Because of this adverse result, in the Fourth Circuit, the work product and attorney-client privileges are construed "quite narrowly." Id. They are recognized "only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Id. (quoting Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998)).

The party asserting a privilege has the burden of showing that it applies. Id. (citing United States v. Under Seal, 341 F.3d 331, 335 (4th Cir. 2003)). Amongst other things, the party asserting attorney-client privilege must establish that:

> (2) the person to whom the communication was made . . . act[ed] as a lawyer [in connection with the communication]
> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding . . .
> (4) the privilege has been (a) claimed and (b) not waived by the client.

Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998). The party asserting the work product doctrine must establish that the document at issue was prepared by, or at the direction of,

3

an attorney in anticipation of litigation.    Hickman v. Taylor,
329 U.S. 495 (1947).

## DISCUSSION

Brainware  asks  that  four  categories  of  documents  be
produced:    (1)    documents    involving    communications    that    were
exchanged    with    lawyers    employed    by    Patriarch    Partners,    LLC
("Patriarch");    (2)    documents    involving    communications    between
business persons at Scan-Optics, LLC and Scan-Optics, Ltd.; (3)
documents    involving    non-lawyer    communications;    (4)    documents
that  Scan-Optics,  Ltd.  did  not  originally  identify  on  its
privilege  log.    Each  category  of  documents  will  be  addressed  in
turn.

## A.  Patriarch

Scan-Optics,  Ltd.  and  Scan-Optics,  LLC  have  not  met  their
burden with respect to the communications with in-house counsel
for Patriarch.  The defendants argue that they (Scan-Optics, LLC
and    Scan-Optics,    Ltd.)    and    Patriarch    are    "sufficiently
interrelated" such that they can be "treated as one entity" for
the  purposes  of  attorney-client  privilege.    Scan-Optics,  LLC
Opening  Brief  at  2  (citing  Edna  Selan  Epstein,  The  Attorney-
Client  Privilege  and  the  Work-Product  Doctrine  § III.E2.A.3).[1]

---

[1]  Scan-Optics,  Ltd.  incorporated  Scan-Optics,  LLC's  arguments
with respect to these communications in its brief.  Scan-Optics,

4

Brainware contends that the relationship between Patriarch and the defendants has not been established on the record respecting the privilege issues and that, from what has been revealed about that relationship, it appears that Patriarch is a separate entity.  Brainware Response at 8.  Brainware points out that Patriarch is not a party to the litigation, was not a party to the contract at issue in the case, is not a parent of either defendant, and has no ownership interest in either defendant. Id.  And, those facts are not in dispute, at least at this stage of the case.

The defendants have not provided a description of Patriarch in their privilege log summary.  They have not identified the roles, offices, and companies of each person named in the privilege log.  Thus, the reader cannot decipher which persons work for Patriarch, which work for Scan-Optics, Ltd., which work for Scan-Optics, LLC, and which do not work for any of these entities.

The defendants' response briefs do not remedy those defects.  In those briefs, the defendants provide the following description of Patriarch: "Patriarch is the collateral manager of investment funds that own controlling equity stakes in approximately 75 'portfolio companies,' including Scan-Optics,

_____

Ltd. Opening Brief at 12.

LLC[2] which, in turn, is the sole shareholder of Scan-Optics, Ltd. [] The funds have no employees and can only act through Patriarch as collateral manager." Scan-Optics, LLC Opening Brief at 2. This terse description is wholly inadequate. It certainly does not show that there is a relationship between Patriarch and either defendant of any sort that would give rise to any privilege. What do the defendants mean when they assert that Patriarch is a collateral manager of investment funds, and that the funds can "act only through" Patriarch? What is the organizational structure of each of these three entities? How do they work together and how often? And, who works for whom? None of these is explained.

It is the defendant's burden to provide this information. "Because [parties seeking to challenge a claim of privilege] do not actually have access to the privileged documents, they must rely on the opposing party's description of them in the privilege log. Accordingly, the descriptions in the log must satisfy the claiming party's burden." ePlus Inc. v. Lawson Software, Inc., 2012 U.S. Dist. LEXIS 21636, 7-9 (E.D. Va. Feb. 21, 2012) (citing and quoting Rambus, Inc. v. Infineon Techs.

---

[2] The parties sometimes use the labels Scan-Optics, USA (which is another name for Scan-Optics, LLC) and Scan-Optics, UK (which is another name for Scan-Optics, Ltd.) to describe the defendants. For purposes of consistency, the labels Scan-Optics, LLC and Scan-Optics, Ltd. are used throughout this opinion.

AG, 220 F.R.D. 264, 272 (E.D. Va. 2004)). Here, not only do the descriptions in the privilege log fail to identify and explain the relationship Patriarch has with each defendant, but the descriptions failed to differentiate between companies, or describe the role of the persons to whom each communication was sent.  Nor did either defendant establish the relational predicate for a privilege between it and Patriarch.[3]

The in camera review of the documents claimed to be privileged does not supply any of the necessary information. Nothing in the documents shows any bases for predicating a claim of either the attorney-client or the work-product privilege on the bases of whatever relationship there may be between the defendants and Patriarch.

There is a complete failure of the burden to show that the privileges at issue exist to the extent that the privilege is

---

[3] Even if the defendant had established that the privilege could be extended to communications with Patriarch lawyers, it would still have to show that the Patriarch lawyers' advice was more likely "legal" than "business" in nature.  See Am. Nat'l Bank & Trust Co. v. Equitable Life Assur. Soc'y of the United States, 406 F.3d 867, 879 (7th Cir. 2005) (noting that the area of privilege law involving protection for communications with in-house counsel is "especially difficult" because it requires distinguishing legal advice from business advice) (citations and quotations omitted); Neuder v. Battelle Pacific Northwest National Laboratory, 194 F.R.D. 289, 293 (D.D.C. 2000) ("In cases that involve in-house counsel it is necessary to apply the privilege cautiously and narrowly lest the mere participation of an attorney be used to seal off disclosure.").  No such showing has been made.

based on documents prepared or shared with Patriarch's in-house counsel or its officers, directors, or employees.

Nor has there been any showing of a joint defense agreement or privilege respecting the defendants and Patriarch.

Brainware's request for the disclosure of documents prepared by, forwarded or copied to, or reflecting the ideas of attorneys at Patriarch will be granted.[4]

## B. Communications Between Business Persons

Scan-Optics, LLC and Scan-Optics, Ltd. claim that several documents exchanged between business persons are privileged. Attorneys were listed as copy recipients of those documents. The documents at issue are communications between business persons at the two companies relating to fees billed and amounts owed by Scan-Optics, Ltd. The fact that an attorney is copied on these emails does not make them about "legal matters." See Gould, Inc. v. Mitsui Min. & Smelting Co., 825 F.2d 676, 679-80 (2nd Cir. 1987); Isom v. Bank of Am., N.A., 177 N.C. App. 406, 411 (N.C. App. 2006).

There is nothing privileged at all in these communications, and Brainware's request for disclosure with respect to them is

---

[4] On Scan-Optics, Ltd.'s log, these documents include: Nos. 75-80, 83-88, 92-97, 101-102, 107-112, 117, 136, and 143. On Scan-Optics, LLC's log, these documents include: Nos. 7-8, 11-12, 16-23, 27-34, 36-38, 40, 44-46, 51-52, 54-57, 59-63, and 66-72.

granted.[5]

## C. **Non-Lawyer Communications**

Scan-Optics, LLC and Scan-Optics, Ltd. claim that certain documents that were exchanged between business persons and not copied to lawyers are privileged because they reflected legal advice and/or were done at the direction of an attorney. Brainware argues: (1) the defendants improperly failed to identify the attorney who directed the communications or whose legal advice was reflected therein; (2) the defendants waived the privilege because the communications were made by business persons at Scan-Optics, LLC to business persons at Scan-Optics, Ltd., and the two claim to be separate entities; (3) the timing of the communications indicates that they were made prior to the time Scan-Optics, LLC could have anticipated litigation.

Having reviewed each of the privilege entries and the documents in this category, it is evident that no communications were made "at the direction of an attorney," and only a few "reflect legal advice." And, to the extent that any do reflect legal advice, they reflect the legal advice of Patriarch attorney Robert Sweeny. For the reasons explained above, the predicate for the claim of privilege with respect to communications with Patriarch attorneys has not been

---

[5] On Scan-Optics, Ltd.'s log, these documents include: Nos. 121-123, and 125-127. On Scan-Optics, LLC's log, these documents include: Nos. 75-79.

established.    Thus, Brainware's motion with respect to these communications will be granted.[6]

## D. Documents Not Originally Identified as Privileged

Scan-Optics, Ltd. did not originally identify document Nos. 53, 58-66, and 73-74 as privileged documents.    It filed a Second Supplemental Privilege Log identifying these as privileged on June 6, 2012.    Scan-Optics, Ltd. explains that it initially did not believe these documents were relevant because it did not realize that its corporate structure would be an issue in the case.    Scan-Optics, Ltd. Opening Brief at 19-20. Brainware filed an Amended Complaint in February of 2012 in which it added an "alter-ego" claim, bringing Scan-Optics, LLC into the case.    (Docket No. 16).    Scan-Optics, LLC filed a Motion to Dismiss.    (Docket No. 25).    That motion was denied on May 9, 2012.    (Docket No. 45).    Thereafter, Scan-Optics, LLC filed a privilege log in which it identified the above documents as privileged.    Scan-Optics, Ltd. argues that, at that point, it realized the documents were relevant and sought to file a supplemental privilege log.    Brainware, on the other hand, contends that the documents were responsive to its initial

---

[6]   On Scan-Optics, LLC's log, these documents include: Nos. 53, 58, 64, 65, 73, and 74.    No documents in this category are included in Scan-Optics, Ltd.'s log.    (Scan-Optics, Ltd.'s binder included some of the privileged documents in Scan-Optics, LLC's log, one of which was document No. 74.    That document is the same document in both binders and is not privileged).

discovery requests, arguing that, regardless of whether Scan-Optics, LLC was a party to the case, Scan-Optics, Ltd. had no right to independently conclude that the requested documents were irrelevant and to refuse to produce them.   Brainware's Response at 19.

Brainware is correct, and its motion with respect to the documents listed above will be granted.   The Scheduling Order in this case required the parties to serve their privilege logs at the same time as their objections to requests for production, and provided that any claim of privilege not so raised would be waived (Docket No. 8).   Scan-Optics, Ltd. did not raise its claim of privilege in accord with that Order, and therefore, has waived its rights to claim the documents are privileged.

### CONCLUSION

For the foregoing reasons, Brainware's oral motion and request that the Court compel the production of certain documents (Docket No. 64) from the defendants will be granted.

It is so ORDERED.

/s/        REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 12, 2012

11