

FILED
AUG 16 2012
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRAINWARE, INC.,

    Plaintiff,

v.                                    Civil Action No. 3:11cv755

SCAN-OPTICS, LTD., *et al.*,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the Scan-Optics, Ltd. and Scan-Optics, LLC's JOINT MOTION FOR RECONSIDERATION AND FOR AN INTERIM STAY (Docket No. 75). The Court granted the interim stay on July 16, 2012. July 16, 2012 Order (Docket No. 77). The parties have fully briefed the Joint Motion for Reconsideration, and it is now ripe for review. For the reasons that follow, the motion will be denied.

## BACKGROUND

On May 17, 2012, during a telephone conference with the parties, Brainware, Inc. ("Brainware") brought to the attention of the Court a dispute between the parties over privileged documents. The Court directed counsel to consult and attempt to resolve the disputes; and, in the event that the parties were

unable to do so, both defendants were to file a brief explaining their positions with respect to each document as to which a privilege was claimed. Also, the defendants were required to submit the disputed documents for *in camera* review. See May 18, 2012 ORDER (Docket No. 48). Thereafter, the parties met in an attempt to resolve the dispute and, as a result of the discussions, the defendants produced a number of the requested documents. However, the parties were unable to agree on the status of some 100 documents. The defendants therefore filed a brief and submitted a copy of the allegedly privileged documents *in camera*. Brainware filed a response and the defendants replied. The disputes were resolved by a MEMORANDUM OPINION dated July 12, 2012 and its implementing ORDER issued the same day.[1]

---

[1] Also on July 12, 2012, the Court issued an Order (Docket No. 72) directing the defendants to provide information respecting their corporate structures and their relationships *inter se*. That Order, however, had nothing to do with the issue of privilege. Instead, it was issued because counsel for the defendants had made statements during a conference call describing, in a very muddled fashion, the relationship between the defendants and certain other entities which were not named as defendants in the action. A central premise asserted by Brainware is that the defendant, Scan-Optics, Ltd., is simply the alter ego of the defendant, Scan-Optics, LLC. Accordingly, and because counsel for the defendants were unable intelligently to explain the corporate relationships and, in an effort to move the case along, and to identify persons who should participate in Court-ordered settlement negotiations, the Court issued the Order requiring the defendants to outline their corporate structures and their relationships *inter se*. See ORDER (Docket No. 72).

The July 12 MEMORANDUM OPINION overruling the claims of privilege addressed four categories of documents: (1) documents involving communications that were exchanged by the defendants with lawyers employed by Patriarch Partners, LLC ("Patriarch"); (2) documents involving communications between business persons at the defendants, Scan-Optics, LLC and Scan-Optics, Ltd.; (3) documents involving non-lawyer communications; and (4) documents that Scan-Optics, Ltd. did not originally identify on its privilege log. For the reasons set forth in the MEMORANDUM OPINION, the claims of privilege were overruled and the defendants were directed to produce the documents in each category addressed in the July 12 MEMORANDUM OPINION.

In their JOINT MOTION FOR PARTIAL RECONSIDERATION AND FOR AN INTERIM STAY (Docket No. 75), the defendants seek reconsideration only "to the extent the [July 12, 2012] ORDER requires the defendants to produce their confidential communications with attorneys for Patriarch Partners, LLC ("Patriarch".)"[2] The defendants have alleged that the "remaining categories of documents covered by the Court's Order have already been produced, and the defendants do not seek reconsideration with respect to those issues." Id. Brainware asserts that not all of those documents have been produced. The

---

[2] DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL RECONSIDERATION AND FOR AN INTERIM STAY at 2 (Docket No. 76).

3

defendants, having no dispute under the Order respecting the "remaining documents," will be ordered to produce any of those documents that have not yet been produced.

## DISCUSSION

It is within the discretion of the Court to grant a motion for reconsideration of an interlocutory order. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983); Saint Annes Dev. Co. v. Trabich, 443 Fed. Appx. 829, 832 (4th Cir. 2011). The "heightened standards" applicable to motions for reconsideration of final orders do not apply to reconsideration of interlocutory orders. Id. (quoting Am. Canoe Assoc. v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003)). The Court has "plenary power" to afford such relief "as justice requires." Fayetteville Inv. v. Commercial Builders, 936 F.2d 1462, 1473 (4th Cir. 1991).

However, in deciding a motion to reconsider, the Court must not reevaluate the basis upon which it made a prior ruling, if the moving party is simply "rearguing" a prior claim. Glenn v. Inland Container Corp., No. 3:92cv27, 1992 WL 521517, at *1 (E.D. Va. May 13, 1992), aff'd 991 F.2d 789 (4th Cir. 1993). "It is only appropriate for the court to review a previous decision where, for example, it 'has patently misunderstood a party, or has made a decision outside the adversarial issues

4

presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . Such problems rarely arise and the motion to reconsider should be equally rare.'" U.S. v. Smithfield Foods, 969 F. Supp. 975, 977 (E.D. Va. 1997) (quotations and citations omitted). There is a limited context in which a litigant should move for reconsideration.

The documents at issue here are communications between the defendants, Scan-Optics, LLC and Scan-Optics, Ltd., with lawyers who are employed by Patriarch. As to those documents, the Court held that the defendants had "not met their burden with respect to the communications with in-house counsel for Patriarch." MEMORANDUM OPINION at 4 (Docket No. 70). That ruling was made in response to a showing by Brainware that the relationship between Patriarch and the defendants had not been established on the extant record sufficient to support the claims of privilege and upon Brainware's showing that Patriarch was not a party to the litigation, not a party to the contract at issue, was neither a parent nor an affiliate of either defendant, and had no ownership interest in either defendant. The Court held, on the basis of the record then before it, that those facts were not in dispute.

Further, the Court held that the description of Patriarch and its relationship to the defendants was insufficient to support a claim of privilege and that the briefs did nothing to

5

further a finding of privilege. In particular, the Court noted that the defendants provided the following terse, conclusory description of Patriarch: "Patriarch is the collateral manager of investment funds that own controlling equity stakes in approximately 75 'portfolio companies' including Scan-Optics, LLC which in turn is the sole shareholder of Scan-Optics, Ltd. [] the funds have no employees and can only act through Patriarch as collateral manager." That description was held to be inadequate to show any relationship sufficient to give rise to a privilege. Accordingly, the Court held that the defendants had failed to carry their burden to establish the claims of privilege respecting those documents that contained communications between Patriarch and the defendants. In conclusion, the Court held that: "[t]here is a complete failure of the burden to show that the privilege at issue exists to the extent that the privilege is based on documents prepared or shared with Patriarch's in-house counsel or its officers, directors or employees." July 12, 2012 MEMORANDUM OPINION at 7-8 (Docket No. 70). The Court also noted that there was no showing of a joint-defense respecting the defendants and Patriarch.

Measured against the appropriate standard for reconsideration, the defendants' claim for reconsideration fails. The defendants have not established that the Court

6

patently misunderstood a party or made a decision outside the adversarial issues that were presented to the Court by the parties or had made an error not of reasoning but of misapprehension. Accordingly, there simply is no basis upon which to reconsider the July 12, 2012 MEMORANDUM OPINION or the ORDER implementing it.

The bottom line is quite simple. The claim of privilege as to the category of documents now at issue was based on the defendants' relationship with Patriarch, but there was no proof offered to support a finding that whatever relationship existed would warrant the finding of the existence of a privilege. In essence, what the defendants seek now is another bite at the apple; an opportunity to re-argue their motion using information which was known to the defendants at the time they submitted their briefs on the privilege issue but which was not presented to the Court. The defendants had a full and fair opportunity to meet their burden, and they failed to do so. The defendants offered no justification for that failure, and it would be fundamentally unfair to Brainware to allow the defendants a chance to fill in the gaps in their proofs now, after the issue has been decided.

But, even if the Court were to extend the defendants another opportunity to establish their claim of privilege, using the information they submitted in response to the Order

requiring particularization of the corporate relationships, the result would be no different. What the defendants have shown is that they are something called "portfolio companies" that are owned by funds known as Zohar I and Zohar II. The newly submitted information does not establish that Patriarch owns Zohar I or Zohar II; in fact, it clearly establishes that neither defendant is owned by Patriarch. Rather, the defendants continue to say that Patriarch is "an investment firm that acts as the collateral manager for the investment funds [Zohar I and Zohar II] that own defendant, Scan-Optics, LLC, which in turns owns defendant, Scan-Optics, Ltd." That establishes only that Patriarch is an investment manager for the funds that do own the defendant, Scan-Optics, LLC (which in turn owns defendant, Scan-Optics, Ltd.).[3] Further, the defendants clearly describe Patriarch's relationship as collateral manager as one fixed by contract, not by corporate affiliation. The Court has located no authority and the defendants have cited none which would permit a finding that an investment firm that serves as manager of the collateral of a company that owns a defendant in a case somehow has a corporate relationship with the defendant sufficient to warrant a conclusion that there is a basis upon which a privilege can be established.

---

[3] DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL RECONSIDERATION AND FOR AN INTERIM STAY at 2 (Docket No. 76).

In essence, the defendants are presenting an expanded version of the conclusory and terse explanation which they submitted in the first go-round, but the expanded description provides no more substance than the conclusory version. Certainly, the expanded version permits no basis for a finding of privilege covering communications between Patriarch and the defendants.

The defendants argue that "[e]ach of Patriarch, the funds it manages, and the defendants are ultimately owned by Ms. [Lynn] Tilton." That assertion is in DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL RECONSIDERATION AND FOR AN INTERIM STAY at 3 (Docket No. 76). That assertion, however, is at odds with earlier statements in the briefs, as well as statements made on the record in telephone conferences, that the defendant, Scan-Optics, LLC is owned by certain funds (now identified as Zohar I and Zohar II) which are managed [not owned] by Patriarch. In sum, the defendants attempt to carry their burden of persuasion to show existence of a privilege by making assertions that are flatly at odds with previous assertions respecting their ownership. They cannot be held to carry their burden by making inconsistent statements.

In any event, all of this information was known to the defendants at the time of the original briefing, and they should have presented it then for consideration. It may well be that

the motivation for the obstruction engaged in by the defendants lies in their desire to avoid being treated as alter ego entities for purposes of the liability aspects of this case. They have steadfastly asserted that there are no relationships sufficient to give rise to the piercing of the corporate veil. Now, in order to protect the privilege, they attempt to wrap themselves in the cloak of identical ownership. It is fundamental to the law that parties cannot take inconsistent positions on the same basic issues. Here, that is precisely what the defendants have done. They cannot be allowed to do so even if the Court were to consider the belated filing in support of the claim of privilege, which, for the reasons set forth above, the Court will not do.[4]

Finally, the defendants make the argument that when they put certain questions to Ms. Schiff and Mr. Sweeny, both of whom are employed by Patriarch as lawyers, they intended to be represented by those lawyers in respect of the matters as to which the requests were presented. That, however, overlooks the

---

[4] To the extent that the defendants seek permission to revise the privilege logs, and to use the information attached to the motion for reconsideration to that end, that request is denied. It is axiomatic that the privilege log must be submitted in such detail as to permit a challenge to the claims of privilege and to warrant a finding that the claims are satisfied by looking at the text of the privilege log. Here, the Court simply will not award the defendants for their efforts to obscure information about their relationship and ownership by allowing them belatedly to do what they should have done earlier and what they steadfastly have declined to do.

other basic point. There was nothing in the record to show that either Ms. Schiff or Mr. Sweeny were in any way engaged as lawyers to represent the defendants. There is no showing on the record that there was any understanding that Sweeny and Schiff would be representing them in this dispute. To the contrary, the *in camera* documents show that Ms. Schiff and Mr. Sweeny were representing Patriarch, an unrelated third-party investment manager.

In reality, this argument is nothing but a recycled version of the assertion that there is a sufficient corporate relationship to permit the existence of a privilege by communicating with lawyers employed by and representing a third-party entity (here Patriarch) that has no contractual connection with the case (from all that appears at this stage) and that has no ownership interest in the defendants, serving instead only as a "collateral manager" for the funds that do own the defendants. This recycled version of the same argument about the affiliation between Patriarch and the defendants is rejected.

## CONCLUSION

The bottom line here is simple. The defendants refused to produce certain requested documents, asserting the existence of an attorney-client privilege as to some and a work-product privilege as to others. The Court required briefing on the privilege claims and reviewed the documents *in camera*. The defendants were afforded a full and fair opportunity to present their positions in support of the privilege claim; they chose what to present. They chose to be obfuscatory. They chose to build a record that was legally insufficient to support the burden that the law imposes upon them.

Their claims were, as to the issue of the Patriarch documents, rejected, and it is too late now to consider the belated information submitted in support of the frail and inadequate arguments presented to defend the privilege. But, even if that information was considered, it is still insufficient to support the finding of a relationship that would warrant the finding of a privilege, either work-product or attorney-client.

Apparently, Ms. Tilton, Patriarch, the funds, Zohar I and Zohar II, and Scan-Optics, LLC have established a convoluted way of doing business which they now contend establishes a corporate familial relationship sufficient to establish a privilege even though the collateral manager (Patriarch) has no ownership stake

12

in the defendants and is simply a third-party outsider to the defendants.

If the parties had some joint interest that was sufficient to establish a joint-defense agreement of some sort, perhaps it might be possible to consider such an argument. However, it is undisputed that there is no joint-defense agreement. It is undisputed that Patriarch is not a defendant in the action. It is asserted by the defendants that Patriarch had no role in creating the contract that is at issue in this case or in making the decisions to commit the acts that are alleged to constitute the breaches of the contract. On the record, the Court cannot find any basis for a privilege, and the JOINT MOTION FOR RECONSIDERATION AND FOR AN INTERIM STAY (Docket No. 75) will be denied to the extent that it is a motion for reconsideration. The previously granted interim stay will be dissolved.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 16, 2012